## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |  |
|---|---|---|
| LARRY FLORES, individually and on behalf of all others similarly situated, | : : : | **CASE NO. 2:19-CV-12368** |
|  | : | CLASS ACTION |
| Plaintiff, | : |  |
|  | : | **Judge Linda V. Parker** |
| v. | : | **Magistrate Judge R. Steven** |
|  | : | **Whalen** |
|  | : |  |
| VILLAGE FORD, INC., | : |  |
|  | : |  |
| Defendant. | : |  |
| _____ | / |  |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Larry Flores, on behalf of himself and a class of similarly situated persons, with the consent of Defendant, Village Ford, Inc. ("Village Ford" or "Defendant"), respectfully requests entry of an order granting preliminary approval of the class action settlement set forth in the Parties' Settlement Agreement ("Settlement Agreement" or "Agreement"), certifying a class for settlement purposes, and providing for issuance of Notice to the Settlement Class.[1]

### I.     INTRODUCTION

After hard-fought litigation and with the help of well-respected mediator, Judge Mike Mason (Ret.), the Parties have reached an agreement to resolve the claims against Defendant in this Action pursuant to the accompanying Settlement Agreement.  The Settlement Agreement establishes an $1,050,000.00 Settlement

_____

[1] The Agreement is attached as **Exhibit A**.  All capitalized terms used herein have the same definitions as those defined in the Agreement.

Fund, which will also be used to the pay the costs of Settlement Administration and Notice Administration.

This motion seeks the entry of an order providing for, among other things:

1. Preliminary Approval of the Settlement;

2. Preliminary certification of a Settlement Class and appointment of the Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

3. Approval of the Settlement Administrator, Notice Administrator and Escrow Agent;

4. Approval of the Notice program describing:

   a. The Settlement and the Settlement Class members' rights with respect to the Settlement;

   b. The proposed Release of claims;

   c. Class Counsel's request for attorneys' fees and expenses, as well a Service Award for the Class Representative; and

   d. The procedure for opting-out of or objecting to the Settlement

5. Approval of the Claims process; and

6. The scheduling of a Final Approval Hearing to consider Final Approval of the Settlement.

The Parties' proposed Settlement is exceedingly fair and well within the range of Preliminary Approval for several reasons. *See* Declaration of Scott Edelsberg ¶ 2, attached hereto as **Exhibit B**.  First, it provides relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain, especially given Defendant's ability and willingness to continue its vigorous defense of the case. Second, the Settlement was reached only after first engaging in pre-litigation discovery, internal investigations, and extensive arm's-length negotiations, including a mediation that lasted a full-day. Specifically, on January 16, 2020 and with the assistance of Mediator the Honorable Michael T. Mason (Ret.) of JAMS

Alternative Dispute Resolution, counsel for the Parties met in Chicago, Illinois and engaged in intensive negotiations in a mediation lasting more than ten hours in order to resolve the Litigation with a view toward achieving substantial benefits for the Settlement Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate practice. although the day-long formal mediation did not result in a final resolution of the Litigation, the Parties subsequently reached a resolution believed by them to be fair and reasonable through subsequent efforts and negotiations directly between counsel for the Parties. Third, the Settlement was not conditioned on any amount of attorneys' fees for Class Counsel or Service Award for Plaintiff, which speaks to the fundamental fairness of the process. Edelsberg Decl. ¶ 3.

For all of these reasons, and as further described below, Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

## II.     BACKGROUND

### a.  Facts

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…."[2] To market vehicle promotions, and vehicle-maintenance services, Village Ford—using a third-party platform—sent pre-recorded calls s ("Village Ford Messages") to Plaintiff and approximately 11,426 other individuals. In total, Defendant's vendor sent 147,141 pre-recorded messages. Plaintiff alleged that these actions violated the TCPA because the pre-recorded calls were sent to consumers cellular telephones without express written consent. Defendant continues to deny causing any pre-recorded messages to be placed without consent and denies

---

[2] Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

any and all liability under the TCPA. Nevertheless, the Parties have concluded this Settlement is fair and reasonable under the circumstances presented here.

### b. **Procedural History**

On August 9, 2019, Plaintiff initiated this litigation against Village Ford in the United States District Court for the Eastern District of Michigan, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. [DE #1]. After filing its Statement of Disclosure, [DE #4], Village Ford filed an Answer and Affirmative Defenses. [DE #5].

On October 7, 2019, after conducting a telephonic meet and confer the Parties submitted a Joint Scheduling Report. [DE #9]. Discovery subsequently commenced, wherein Class Counsel served written discovery and documents requests on Defendant as well as subpoenas to third-parties.

On December 6, 2019, the Parties filed a Joint Stipulation to Stay Case for Sixty Days [DE #27] while the parties explored early resolution of this matter.

After the Parties jointly moved to stay the case for sixty days, on January 16, 2020, the Parties mediated in Chicago, Illinois with the Honorable Michael T. Mason (Ret.) serving as mediator. At meditation, the Parties reached an agreement to settle the Action. Following further negotiations, the Parties executed a term sheet memorializing their understanding on January 29, 2020. The next day, the Parties filed a Notice of Settlement with the Court [DE #30]. Following further discussions, the Parties resolved all remaining issues, culminating in the signing of the Settlement Agreement.

### III. **SUMMARY OF THE SETTLEMENT TERMS**

The following is a summary of the material terms of the Settlement.

### a. **The Settlement Class**

The proposed Settlement establishes a Settlement Class as follows:

All individuals (within the United States) (i) who were

sent a prerecorded message(s) (ii) by Affinitiv, Inc. or any of its predecessors including but not limited to Call Command and One Command on behalf of Village Ford, Inc., (iii) for the purpose of promoting Village Ford, Inc.'s property, goods, and/or services, (iv) from August 9, 2015 through the date of final approval.

Agreement ¶ 35. The following are excluded from the Settlement Class: (1) the trial judge presiding over this case; (2) Village Ford, as well as any parent, subsidiary, affiliate or control person of Village Ford, and the officers, directors, agents, servants or employees of Village Ford; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Settlement Class member who has timely opted-out of this proceeding; and (6) Plaintiff's Counsel and their employees.

### b. <u>Settlement Consideration</u>

Pursuant to the Settlement, Village Ford has agreed to establish a cash settlement fund for the benefit of Settlement Class Members in an amount of $1,050,000.00 ("Settlement Fund"). Village Ford will deposit the Settlement Fund into an Escrow Account within 30 calendar days of Preliminary Approval. Agreement ¶ 52.

### c. <u>The Notice Program</u>

Pending this Court's approval, Kurtzman Carson Consultants LLC ("KCC") will serve as the Notice Administrator, and will be responsible for administrating the Notice Program. The Notice Program consists of four different components: (1) Mailed Notice, (2) A Toll-Free Telephone Number, (3) Long-Form Notice, and (4) a website. Agreement ¶ 45. The forms of the proposed Email Notice, Mailed Notice, and Long-Form Notices, agreed upon by Class Counsel and Village Ford, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as Exhibits 1-3.

The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and/or the request for a Service Award; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement, and other important documents. Agreement ¶¶ 40-48.

### i. Mailed Notice

The Mailed Notice shall consist of a direct mail postcard. A copy of the Mailed Notice is attached to the Settlement Agreement as Exhibit 1. The Mailed Notice will direct Settlement Class members to the Settlement Website (www.VFTCPAsettlement.com) where they will be able to complete and submit an electronic Claim Form. To the extent necessary, the Settlement Administrator will determine mailing addresses for Settlement Class members by conducting a "Reverse Append" address look-up and comparing those addresses with the U.S. Post Office's National Change of Address database. Agreement ¶ 46.

In the event postcards are returned for insufficient addresses, the Notice Administrator will attempt to identify a better address for the Settlement Class member and will re-mail the postcard to that address ("Notice Re-mailing Process"). The Mailed Notice Program (which is composed of both the Initial Mailed Notice and the Notice Re-mailing Process) shall be completed no later than 45 days before the Final Approval Hearing. Agreement ¶ 47.

### ii. Long-Form Notice

The Mailed Notice will all contain the address for the Settlement Website, www.VFTCPAsettlement.com. On the website, Settlement Class members will find

important documents and court filings, including the Long-Form Notice, which will contain more detail than the Mailed Notice, and Online Notice. A copy of the Long Form Notice is attached to the Settlement Agreement as Exhibit 2. Further, The Long Form Notice will be sent to all Settlement Class members who contact the Settlement Administrator by telephone or email and request a copy. Agreement ¶¶ 33, 45.

### iii. Settlement Website & Toll-Free Telephone Number

The Settlement Administrator will establish a Settlement Website as a means for Settlement Class members to obtain notice of, and information about, the Settlement. Agreement ¶ 33. The Settlement Website will be established as soon as practicable following Preliminary Approval, but no later than before commencement of the Notice Program. *Id*. The Settlement Website will include an online portal to file Claim Forms, hyperlinks to the Settlement, the Long-Form Notice, the Preliminary Approval Order, and other such documents as Class Counsel and counsel for Village Ford agree to post or that the Court orders be posted on the Settlement Website. These documents will remain on the Settlement Website at least until Final Approval. *Id*.

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries. *Id*.

### d. Claims Process

The Claims Process here is straightforward, easy to understand for Settlement Class members, and designed so that they can easily claim their portion of the Settlement Fund. Edelsberg Decl. ¶ 5. Settlement Class members will make a claim by submitting a valid Claim Form to the Claims Administrator, which will then be evaluated for timeliness and completeness. A copy of the Claim Form is attached to the Settlement Agreement as Exhibit 3. Claim Forms may be sent in by hard copy

or submitted electronically on the Settlement Website. The Claim Form requires basic information from Settlement Class members: (1) name; (2) current address; (3) telephone number(s) at which she or he was sent a Village Ford Message; and (4) a current contact telephone number. A Settlement Class Member must also represent under oath that he or she received a Village Ford Message. Once a Settlement Class member submits a Claim Form that is approved by the Settlement Administrator, the Settlement Class Member will then be eligible to automatically receive a cash payment. In the event a Claim Form is deficient, in that information is missing, inaccurate, or doesn't match up to a telephone number that received a Village Ford Message, the Claims Administrator will attempt to contact the Settlement Class member and the Settlement Class member will have another opportunity to submit a valid Claim Form. Untimely Claim Forms will be rejected and those Settlement Class Members will not receive a Settlement Fund Payment. If those same Settlement Class Members also fail to timely opt-out, they will remain in the Settlement Class and their claims will be released. Agreement ¶ 40. Claim Forms can be submitted until 15 days following the Final Approval Order.

### e. **Allocation of the Settlement Fund Payments**

Each Settlement Class Member who timely files a valid Claim Form shall automatically receive a cash distribution payable by check. The amount of each cash distribution shall be determined by the following formula: Net Settlement Fund divided by total number of Settlement Class Members = Settlement Fund Payment. Agreement ¶ 56. Settlement Class Claimants will be sent their Settlement Fund Payments to the address they submitted on their Claim Form no later than 45 days following the Effective Date. *Id*.

### f. **Residual Funds Remaining After Initial Distribution**

Four months after the date the Settlement Administrator mails the first round of Settlement Fund Payments, any residual funds in the Settlement Fund shall be distributed as follows:

>   i.   Any Settlement Fund Payments that remain uncashed after 180 days from issuance shall go to Center for Exceptional Families (CEF), a section of Beaumont Hospital; and

>   ii.  All costs associated with the disposition of residual funds – whether through additional distributions to Settlement Class Claimants and/or through an alternative plan approved by the Court – shall be borne solely by the Settlement Fund.

Agreement ¶ 57.

### g. **Settlement Administrator**

Pending this Court's approval, KCC, shall serve as the Settlement Administrator. The Settlement Administrator's responsibilities are detailed in Paragraph 40 of the Agreement.

### h. **Opt-Out and Objection Procedures**

Settlement Class members who do not wish to participate in the Settlement may opt-out of the Settlement by sending a written request to the Settlement Administrator at the address designated in the Notice. Settlement Class members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Village Ford, subject to any defenses that Village Ford may have against those claims. The Settlement Agreement details the requirements to properly opt-out of the Settlement Class. Agreement ¶ 42. A Settlement Class member must opt-out of the Settlement Class by the Opt-Out Period, which is 30 days prior to the Final Approval Hearing. The Settlement

Administrator will communicate any opt-out requests to Class Counsel, who will in turn report them to the Court as part of the Final Approval Hearing and those names will be referenced in an exhibit to the Final Approval Order. Agreement ¶ 42.

Settlement Class Members who wish to file an objection to the Settlement must do so no later than 30 days prior to the Final Approval Hearing.  Pending Court approval, for an objection to be considered by the Court, it must include the following:

a.   the name of the Action;

b.   the objector's full name, address and telephone number;

c.   an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d.   all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;

e.   the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such an objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

f.   the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

g.   a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections made by individuals or organizations represented by that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

h. any and all agreements that relate to the objection or the process of objecting— whether written or oral—between objector or objector's counsel and any other person or entity;

i. the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

j. a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing;

k. a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; and

l. the objector's signature (an attorney's signature is not sufficient).

Agreement. ¶ 43.

### i. <u>Release of Claims</u>

In exchange for the Settlement consideration, Plaintiff and all Settlement Class Members, each on behalf of himself or herself and on behalf of his or her respective heirs, assigns, beneficiaries, and successors, shall automatically be deemed to have fully and irrevocably released and forever discharged Village Ford and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former directors and officers, employees, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, agents, independent contractors, text messaging service providers, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them, of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters at any time from the beginning of the Class Period

through the date an order preliminary approving the Settlement Agreement is entered by the Court, that were or could have been claimed, raised, or alleged in this Action to the extent they arise from or relate to Village Ford Messages sent by or on behalf of Village Ford. Agreement ¶ 61.

### j.   Class Counsel Fees and Expenses and Plaintiff's Service Award

Village Ford has agreed not to oppose Class Counsel's request for attorneys' fees of up to 40% of the Settlement Fund and not to oppose Class Counsel's request for reimbursement of costs and expenses. Agreement ¶ 62. Village Ford has also agreed not to oppose an application for a Service Award for the Plaintiff up to $5,000. Agreement ¶ 64.  The Court should consider whether to grant or deny these awards separate and apart from its consideration of the fairness and reasonableness of the Settlement.

## IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL
### a.   The Legal Standard for Approval of a Class Action Settlement

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e). As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources.  *See UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise

overwhelm any potential benefit the class could hope to obtain. *See UAW*, 497 F.3d at 632 ("In view of the risks the [plaintiffs] faced from losing and winning the *Yard-Man/Sprague* debate, it is . . . no wonder that both district courts thought that the settlement was a fair way of handling the risks of litigation.") (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). The Sixth Circuit is in accord with other Federal Circuits in favoring settlement in class actions.  *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also 4 Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a multi-step process. *Doe v. Deja Vu Servs., Inc.*, 2017 WL 490157, *1 (E.D. Mich. Feb. 7, 2017). The three steps are:

> (1) preliminary approval of the proposed settlement at an informal hearing; (2) dissemination of mailed and/or published notice of the settlement to all affected class members; and (3) a formal fairness hearing or final approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

*Id.*

At the preliminary approval step the Court must make a preliminary determination on the "fairness, reasonableness, and adequacy of the settlement terms."  *See Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 803 F.2d 878, 880 (6th Cir. 1986) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted)).  In the third step, after the second step notice to settlement class members and time and opportunity for them to object or otherwise

be heard, the court considers whether to grant final approval of the settlement as fair and reasonable under Rule 23. Fed. R. Civ. P. 23(e)(2); *see also In Re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*, 2016 WL 5338012 at *6 (citing *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 98 (E.D. Pa. 2013) ("a class action cannot be settled without the approval of the court and a determination that the proposed settlement is 'fair, reasonable and adequate'")).[3]

The standard for granting preliminary approval is low—Courts will ordinarily grant preliminary approval of a settlement where, as here, the settlement "(1) does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys, and (2) appears to fall within the range of possible approval." *Dallas v. Alcatel-Lucent USA, Inc.*, 2013 WL 2197624, at *8 (E.D. Mich. May 20, 2013); *see also Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010) (citing *International Union v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363, at *4 (E.D. Mich. July 13, 2006). The purpose of the preliminary, pre-notification hearing "is to ascertain whether there is *any* reason to notify the class members of the proposed settlement and proceed with the fairness hearing." *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010) (quoting MANUAL FOR COMPLEX LITIGATION § 1.46 at 53-55 (1981) (emphasis added); *see also* NEWBERG ON CLASS ACTIONS §

---

[3] "Approval of a proposed settlement is committed to the sound discretion of the trial court and the order approving a settlement will not be disturbed absent an abuse of discretion." *Detroit Police Officers Ass'n v. Young*, 920 F. Supp. 755, 760 (E.D. Mich. 1995) (citing *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990)). The basic test for fairness involves "weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983).

13:13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness."). The preliminary approval inquiry is not an onerous one and can often "be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties." Sims v. Pfizer, Inc., No. 10-cv-10743, 2015 U.S. Dist. LEXIS 153480, at *3 (E.D. Mich. Nov. 13, 2015) (quoting *Manual for Complex Litigation* (4th) § 21.632; and citing *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 337 (N.D. Ohio 2001)).

Moreover, effective December 1, 2018, Rule 23(e) was amended to, among other things, specify that the focus of a court's preliminary approval evaluation is whether "giving notice [to the class] is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

In light of the public policy favoring settlements, the district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v. Int'l Union of Allied Industrial Workers of Am.*, 803 F.2d 878, 880 (6th Cir. 1986). Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2005) ("Newberg") (collecting cases); *cf. Rankin v. Rots*, No. 02-cv-71045, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006) ("[T]he only

15

question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.") (internal quotation marks omitted). Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are not obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).

Class Counsel and Village Ford respectfully request that the Court take the first step in the settlement approval process and grant Preliminary Approval of the Settlement.   The Settlement is clearly within the range of reasonableness, and satisfies all standards for Preliminary Approval.

## b. **The Settlement Satisfies the Criteria for Preliminary Approval**

Each of the relevant factors weighs heavily in favor of Preliminary Approval of this Settlement.  First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel.  Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate. Edelsberg Decl. ¶ 6.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiff and Class Counsel believe that the claims asserted are meritorious and that Plaintiff would prevail if this matter proceeded to trial. Village Ford contends  that Plaintiff's claims are unfounded, denies any liability, and has shown a willingness to litigate vigorously.  Edelsberg Decl. ¶ 7.

The Parties concluded that the benefits of the Settlement outweigh the risks and uncertainties attendant to continued litigation that include, but are not limited to, the

risks, time and expenses associated with completing trial and any appellate review. Edelsberg Decl. ¶ 8.

    **c.**   **The Court Will Likely Be Able To Approve The Proposed Settlement Under Rule 23(e)(2) because the Settlement Agreement is the Product of Good Faith, Informed and Arm's Length Negotiations**

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments. For this analysis, courts may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id.* A class action settlement should be approved so long as a district court finds that the settlement "is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Sims v. Pfizer, Inc.*, No. 10-cv-10743, 2015 U.S. Dist. LEXIS 153480, at *3 (E.D. Mich. Nov. 13, 2015) (internal citations omitted); *see also Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

First, the Parties have been actively litigating this Action since its commencement, during which time Class Counsel has engaged in, *inter alia*: (i) extensive factual investigation; (ii) legal research and briefing; (iii) fact discovery propounded upon Defendant; (iv) mediation. As a result, by the time the Settlement was reached, Plaintiff and Class Counsel "had sufficient information to evaluate the strengths and weaknesses of the case and the merits of the Settlement." *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 237 (E.D. Mich. 2016)

(Parker, J.). Edelsberg Decl. ¶¶ 11-12. The proposed Settlement Agreement is the product of careful factual and legal research and arms'-length negotiations between the Parties and is presumptively fair. *See Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) ("Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."). There is nothing in the course of the negotiations or the substance of the settlement that discloses grounds to doubt its fairness – "[w]here a class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair." *Manual* § 21.662 at 464.

Second, there is absolutely no evidence of collusion here. *Gen. Motors*, 315 F.R.D. at 236 ("[C]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." (alteration in original)). Quite the opposite, the Parties reached the Settlement only after mediating their claims before an experienced mediator and following extensive arm's-length negotiations between counsel for the parties. Edelsberg Decl. ¶ 9.  Class Counsel extensively investigated the applicable law as applied to the relevant facts discovered in this action, and the potential defenses thereto. Those efforts included interviews with Class Members and the exchange of key documents with Defendant. The Settlement is based on a robust review of the facts and law. In reaching the proposed Settlement, Class Counsel relied on their substantial litigation experience in similar complex class actions and telemarketing class action cases, and a thorough analysis of the legal and factual issues presented. Plaintiff's liability and damages evaluation was premised on a careful and extensive analysis of claims and telecommunications data produced by Defendant. Edelsberg Decl. ¶¶ 10, 13.  Courts recognize that the opinion of experienced and knowledgeable counsel in support of settlement, after vigorous, arm's-length negotiation, is entitled to considerable weight. *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the

judgment of experienced counsel who has competently evaluated the strength of his proofs."); *UAW v. General Motors Corp.*, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement").

Moreover, Settlement negotiations were facilitated and supervised by an experienced and respected mediator. Edelsberg Decl. ¶ 9. Courts have recognized that the "participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion." *See Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018). *See also In re Canadian Superior Sec. Litig.*, 2011 WL 5830110, at *2 (S.D.N.Y. Nov. 16, 2011) ("a strong presumption of fairness attaches because the settlement was reached by experienced counsel after arm's length negotiations.").

### d. The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable

Rules 23(e)(2)(C) and (D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Here, the Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted.

#### i. Likelihood of Success at Trial

A key factor to be considered in assessing approval of a class action settlement is plaintiff's likelihood of success on the merits, balanced against the relief offered in the settlement. *See Int'l Union*, 497 F.3d at 631. In assessing this factor, courts recognize that "[t]he determination of a reasonable settlement 'is not susceptible to a mathematical equation yielding a particularized sum,' but turns on whether the settlement falls within a range of reasonableness." *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 174 (E.D.N.Y. 2012). Here, the Settlement provides for

an immediate cash recovery more than one million dollars to be allocated among Settlement Class Members following deduction of Court-approved fees and expenses.

Class Counsel are confident in the strength of Plaintiff's case, but are also pragmatic in their awareness of the various defenses available to Village Ford, and the risks inherent in trial and post-judgment appeal. Edelsberg Decl. ¶ 14. The success of Plaintiff's claims, turns on questions that would arise at summary judgment, trial and during an inevitable post-judgment appeal. Further, it still remains unclear whether Plaintiff would be able to certify a class for resolution of the asserted claims at trial. Under the circumstances, Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. Edelsberg Decl. ¶ 15.

Even if Plaintiff and the Settlement Class prevailed at trial, any recovery could be delayed for years by an appeal. *See, e.g., In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497-98 (E.D. Mich. 2008) ("Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement. . . . [T]he proposed Settlements secure . . . an immediate benefit, after approximately two years of litigation, undiminished by further expenses and without the delay, risk and uncertainty of continued litigation.") This Settlement provides substantial relief to Settlement Class Members, without further delay.

## ii.  The Settlement Provides Favorable Relief When Viewed Against the Likelihood of Success on the Merits

To "judge the fairness of a proposed compromise," a court must "weigh[] the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Int'l Union*, 497 F.3d at 631 quotation omitted). When evaluating "the terms of the compromise in relation to the likely benefits of a

successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Indeed "[t]he Court has no reason to second-guess Class Counsel's conclusion that the settlement reached with the Defendants is fair, reasonable, adequate, and in the best interest of the class." *In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, 2016 WL 5338012, at *11.

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"); *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) ("The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable.") To be sure, similar settlements have received final approval by federal courts nationwide. *See, e.g., Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) (finding a per-claim amount range of between $7 and $156 fair, reasonable, and adequate); *Gehrich v. Chase Bank USA*, N.A., 316 F.R.D. 215, 228 (N.D. Ill. 2016) (explaining that "[a] $52.50 recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts.").

The $1,050,000.00 cash recovery in this case is more than reasonable, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement including, but not limited to, the pending motion for class certification, motions for summary judgment, *Daubert* motions, trial as well as appellate review following a final judgment. Edelsberg Decl. ¶ 16.

There can be no doubt that this Settlement is a fair and reasonable recovery for the Settlement Class in light of Village Ford's defenses, the uncertainty of class

certification, and the challenging and unpredictable path of litigation Plaintiff and all Settlement Class members would face absent a settlement.  Edelsberg Decl. ¶ 17.

### iii.  Complexity, Expense and Duration of Litigation

"'[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously "difficult and unpredictable" and settlement conserves judicial resources.'" *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *5 (E.D. Mich. Dec. 12, 2013) (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)).

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual class members, would be impracticable.  Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.  Edelsberg Decl. ¶ 18.

### iv.  Stage of Proceedings and Amount of Discovery Engaged In By the Parties

Courts consider the stage of proceedings at which settlement is achieved to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation. Specifically, Courts focus on the amount of discovery. *See Olden v. Gardner*, 294 F. App'x 210, 218 (6th Cir. 2008) (explaining that the lack of pre-settlement discovery can "weaken[ ] the class counsels' ability to advocate effectively for the plaintiff class during settlement negotiations and therefore suggests that the settlement was not fair, reasonable, and adequate"). However, lack of formal discovery is not an obstacle to final approval as long as the parties has sufficient information to evaluate their positions. *Bowman v. Art Van Furniture, Inc.*, No. 17-

11630, 2018 U.S. Dist. LEXIS 207674, at *13 (E.D. Mich. Dec. 10, 2018) (approving settlement in matter where no formal discovery occurred).

The Settlement was reached only after discovery and an extensive mediation. As a result, Class Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiff's claims and prospects for success at trial and on appeal.  Edelsberg Decl. ¶ 19.

### v.  Opinion of Class Counsel and Class Representative

The opinion of proposed Class Counsel also supports approval. When considering this factor, proposed Class Counsel's "weighing of the relative risks and benefits of protracted litigation" should be given "great deference." *Hyland v. HomeServices of Am., Inc.*, 2012 WL 1575310, at *7 (W.D. Ky. May 3, 2012). This case challenges unwanted telephone calls. People who found the calls annoying can file claims and receive cash, and everyone receives the benefit of Village Ford's prospective business assurances. When viewed against the risks, the Settlement presents a far more favorable outcome for members of the class.

### vi.  The Instant Settlement is in the Public Interest

As a final consideration, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously different and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 530. Here, the settlement of a class action affecting thousands of people is consistent with the public interest, as it is more efficient than the filing of individual suits and conserves judicial resources. Further, settlement will ensure uniformity of results. The Settlement therefore falls within the range of final approval under each of the Sixth Circuit's factors, and notice should be issued to the Class.

### e.  Certification of the Settlement Class is Appropriate

For settlement purposes only, Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class defined in paragraph 35 of the Agreement.

Generally, the standards for certification of a settlement class are less rigorous than in a litigated certification contest. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Id.* For example, the predominance requirement is less demanding because "common issues that preexisted the proposed settlement—involving a common product, defendant, and course of conduct—when considered in light of the proposed settlement, predominate over any individual issues between class members." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 347 (N.D. Ohio 2001).

 Certification of the proposed Settlement Class will allow notice of the Settlement to issue to inform Settlement Class members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633.  For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

24

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 11,426 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); The Sixth Circuit does not employ a strict numerical test; instead, proof of "substantial numbers" of class members satisfy the numerosity requirement. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *In re Foundry Resins Antitrust Litig.,* 242 F.R.D. 393, 403 (S.D. Ohio May 2007) (citing *Bacon v. Honda of America Mfg., Inc*., 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Here, the 11,426 Settlement Class Members easily satisfies the numerosity requirement.

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  Plaintiffs need only identify one common question of law or fact to establish commonality. *Griffin*, 2013 WL 6511860, at *6 (citing *International Union v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363, at *19 *(E.D. Mich. July 13, 2006)). Here, the commonality requirement is satisfied.  There are multiple questions of law and fact — related to the sending of the Village Ford Messages — that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) ("A claim is

typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory.'" ) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1069, 1082 (6th Cir.1996)); s*ee also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). "Like commonality, the typicality requirement is not onerous, and is satisfied if there is a strong similarity of legal theories, 'even if substantial factual distinctions exist between the named and unnamed class members.'" *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 592 (E.D. Mich. 2006); *see also Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").  Plaintiff is typical of absent Settlement Class members because he received a Village Ford Message and claims to have suffered the same injuries as other Settlement Class Members, and because they will all benefit from the relief provided by the Settlement.

The final prerequisite for class certification is adequacy of representation, which requires a showing that "the representative parties will fairly and adequately protect the interests of the class." See Fed. R. Civ. P. 23(a)(4). Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Taylor v. CSW Transp. Inc.*, 264 F.R.D. 281, 291 (N.D. Ohio 2007) (citation omitted). The Sixth Circuit uses a two-prong test to determine if the class representatives will fairly and adequately protect the interests of the class: "'1) [T]he representative must have common interests with unnamed class members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Vassalle*

*v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013) (citations omitted). This calls for an examination of "the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 186 (S.D. Ohio 2012).[4] Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions.  Class Counsel devoted substantial time and resources to vigorous litigation of the Action.

This case also satisfies Rule 23(b)(3), which requires that common questions of law and fact predominate over individual questions, and that a class action is superior to other methods of adjudication. First, "[t]o meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (explaining that Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the

---

[4] "[T]he adequacy of class representation to determine whether class counsel are qualified, experienced, and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (citation omitted)). "Only when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate." *Gooch v. Life Investors. Ins. Co. of Am.*, 672 F.3d 402, 431 (6th Cir. 2012)).

impact of individualized issues in resolving the claim or claims of each class member."). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

### f.  <u>The Court Should Approve the Proposed Notice Program</u>

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit*. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950); *see also In re: Auto. Parts Antitrust Litig.*, 2016 WL 8201483, at *3 (E.D. Mich. Dec. 28, 2016) ("The combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements . . . .") To satisfy this standard, "the notice must reasonably convey the required information and allow a reasonable time for interested parties to make their appearance." *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014). "Finally, the notice must fairly apprise the prospective class members of the proposed settlement's terms, as well as the options available to them." *Id.; see also Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) ("Not only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final

judgment or opt-out of the action.") (internal quotation marks omitted); *Manual for Compl. Lit.*, § 21.312 (listing relevant information).

The Notice program satisfies all of these criteria. As recited in the Settlement and above, the Notice Program will inform Settlement Class members of the substantive terms of the Settlement. It will advise Settlement Class members of their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's Attorneys' fee application and/or request for Service Award, or for opting-out of the Settlement, and how to obtain additional information about the Settlement. The Notice Program is designed to reach a high percentage of Settlement Class members, and exceeds the requirements of Constitutional Due Process. Therefore, the Court should approve the Notice Program and the form and content of the Notices.

## V.      **Proposed Schedule of Settlement-Related Events**

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered. Class Counsel propose the following schedule:

| **Event** | **Date** |
|---|---|
| Deadline for Completion of Mailed Notice Program | 70 days before the Final Approval Hearing |
| Deadline for filing papers in support of Final Approval of the Settlement and | 45 days prior to the Final Approval Hearing |

| Class Counsel's application for an award of attorneys' fees and expenses | |
|---|---|
| Deadline for opting-out of Settlement and submission of objections | 30 days prior to the Final Approval Hearing |
| Responses to Objections | 15 days prior to the Final Approval Hearing |
| The Final Approval Hearing | Approximately 90 days after Preliminary Approval |
| The last day that Settlement Class members may submit a Claim Form to the Settlement Administrator. | 15 days after the Final Approval Hearing |

## VI.   <u>Conclusion</u>

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) approve the Notice program set forth in the Agreement and approve the form and content of the Notices and Claim Form, attached to the Settlement Agreement as Exhibits 1-3; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) appoint Plaintiff, Larry Flores, as Class Representative; (6) appoint as Class Counsel the law firms and attorneys listed in paragraph 5 of the Agreement; and (7) schedule a Final Approval Hearing.  A Proposed Preliminary Approval Order is attached hereto as **Exhibit C**.

Dated: February 18, 2020.                Respectfully submitted,

Andrew J. Shamis
Shamis and Gentile, P.A.
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Email: ashamis@shamisgentile.com

Manuel S. Hiraldo, Esq.
HIRALDO P.A.
401 E. Las Olas Blvd., Ste. 1400
Fort Lauderdale, FL 33301
Email:  mhiraldo@hiraldolaw.com

Michael Leon Eisenband
Eisenband Law, P.A.
515 E. Las Olas Boulevard Suite 120
Fort Lauderdale, FL 33301

Scott Edelsberg, Esq.
Edelsberg Law, PA
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Email:  scott@edelsberglaw.com

Steven K. Mamat
Flood, Lanctot, Connor & Stablein, PLLC
401 N. Main Street
Royal Oak, MI 48067

*Attorneys for Plaintiff and all others
similarly situated*