## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

## CASE NO. 2:19-CV-12368

LARRY FLORES, individually
and on behalf of all others similarly
situated,

     Plaintiff,

v.

VILLAGE FORD, INC.,

     Defendant.

_____/

:
:
:
:
:
:
:
:
:
:
:
:
:
:

CLASS ACTION

Judge Linda V. Parker
Magistrate Judge R. Steven Whalen

## PLAINTIFF'S AND CLASS COUNSEL'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPLICATION FOR SERVICE AWARD, ATTORNEYS' FEES AND EXPENSES, AND INCORPORATED <u>MEMORANDUM OF LAW</u>

On August 9, 2019, Plaintiff initiated this action against Village Ford, Inc., ("Village Ford" or "Defendant") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") claiming that Defendant sent pre-recorded calls to Plaintiff and approximately 11,426 other individuals. Subsequently, the parties negotiated a settlement on behalf of Plaintiff and the class of consumers who received pre-recorded messages from Defendant. On July 8, 2020, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval. [DE 34]. Pursuant to the Court's Order, the Parties proceeded to provide notice to the class. Plaintiff and Class Counsel now seek Final

1

Approval of the Settlement, along with approval of the Service Award for the Class

Representative and reimbursement of attorneys' fees and costs for Class Counsel.

## I.    INTRODUCTION

On August 9, 2019, Plaintiff initiated this litigation against Village Ford in the

United States District Court for the Eastern District of Michigan, alleging violations of the

TCPA, and seeking, *inter alia*, monetary damages. [DE #1]. After filing its Statement of

Disclosure, [DE #4], Village Ford filed an Answer and Affirmative Defenses. [DE #5].

On September 11, 2019, the Court ordered that the parties appear in person on

October 10, 2019 to conduct a scheduling conference [DE #6], where the parties met in

chambers with Judge Linda Parker discussed the merits of case and potential discovery

issues.  During this conference supplemental briefing was ordered regarding the discovery

plan, which both parties filed on October 28, 2019 [DE #19 and #22].

On October 7, 2019, after conducting a telephonic meet and confer the Parties

submitted a Joint Scheduling Report. [DE #9]. Discovery subsequently commenced,

wherein Class Counsel served written discovery and documents requests on Defendant as

well as subpoenas to third-parties.

On December 6, 2019, the Parties filed a Joint Stipulation to Stay Case for Sixty

Days [DE #27] while the Parties explored early resolution of this matter.

On January 16, 2020, the Parties mediated in Chicago, Illinois with the Honorable

Michael T. Mason (Ret.) serving as mediator. At meditation, the Parties reached an

agreement to settle the Action. Following further negotiations, the Parties executed a term

sheet memorializing their understanding on January 29, 2020. The next day, the Parties

filed a Notice of Settlement with the Court [DE #30]. Following further discussions, the Parties resolved all remaining issues, culminating in the signing of the Settlement Agreement. *See* Settlement Agreement and Release ("Agreement" or "Settlement") attached as **Exhibit A**.[1]

On July 8, 2020, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval.  [DE #50]. Pursuant to the Court's Order, the Parties proceeded to provide notice to the class.

Plaintiff and Class Counsel now seek Final Approval of the Settlement, along with approval of a Service Award for the Class Representative and reimbursement of attorneys' fees for Class Counsel.

## II.    MOTION FOR FINAL APPROVAL

### A.    Summary of the Settlement Terms

The Settlement terms are detailed in the Agreement attached as Exhibit A.  The following is a summary of its material terms.

### 1.    The Settlement Class

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> **All individuals (within the United States) (i) who were sent a prerecorded message(s) (ii) by Affinitiv, Inc. or any of its predecessors including but not limited to Call Command and One Command on behalf of Village Ford, Inc., (iii) for the purpose of promoting Village Ford, Inc.'s property, goods, and/or services, (iv) from August 9, 2015 through**

---

[1] All capitalized terms used herein have the same meanings as those defined in the Agreement.

the date of final approval.

Agreement ¶ 35. The following are excluded from the Settlement Class: (1) the trial judge presiding over this case; (2) Village Ford, as well as any parent, subsidiary, affiliate or control person of Village Ford, and the officers, directors, agents, servants or employees of Village Ford; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Settlement Class member who has timely opted-out of this proceeding; and (6) Plaintiff's Counsel and their employees.

### 2.    Monetary Relief

Pursuant to the Settlement, Village Ford has agreed to establish a cash settlement fund for the benefit of Settlement Class Members in an amount of $1,050,000.00 ("Settlement Fund").

### 3.    Class Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Defendant from claims related to the subject matter of the Action.  The detailed release language is found in pg. 24, Section XII of the Agreement.

### 4.    Settlement Notice

Pursuant to the Court's Order, the Parties provided notice to the class. The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Defendant had available about Settlement Class members. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class

4

Counsel's Attorneys' Fee application and request for the Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. *See* Declaration of Scott Edelsberg attached as **Exhibit B**, at ¶ 2.   The Notices and Notice Program constituted sufficient notice to all persons entitled to notice, and satisfied all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

### 5.   Service Award

Pursuant to the Settlement Agreement, Class Counsel are entitled to request a Service Award of $5,000.00 for the Class Representative. Agreement ¶ 64. If the Court approves it, the Service Award will be paid from the Settlement Fund. *Id.* The Service Award will compensate the Class Representative for his time and effort in the Action, and for the risks he undertook in prosecuting the Action against Defendant.

### 6.   Attorneys' Fees and Costs

Pursuant to the Settlement Agreement, Class Counsel are entitled to request attorneys' fees, litigation costs, and expenses up to 40% of the Settlement Fund. Agreement ¶ 62.[2] The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all other material terms of the Settlement. Edelsberg Decl. ¶ 3.

### C.   Argument

Court approval is required for settlement of a class action.  Fed. R. Civ. P. 23(e). As a matter of public policy, courts favor settlements of class actions for their earlier

---

[2] As discussed below, Class Counsel is not seeking the full 40% allowed under the Agreement.

resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *See Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ("*UAW*"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See UAW*, 497 F.3d at 632 ("In view of the risks the [plaintiffs] faced from losing and winning the *Yard-Man/Sprague* debate, it is . . . no wonder that both district courts thought that the settlement was a fair way of handling the risks of litigation.") (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). The Sixth Circuit is in accord with other Federal Circuits in favoring settlement in class actions. *See, e.g., Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also 4 Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006) (citing *Zerkle v. Cleveland-Cliffs Iron Co.*,

52 F.R.D. 151, 159 (S.D.N.Y. 1971). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, federal courts naturally favor the settlement of class action litigation. The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

> **1.      Notice was the Best Practicable and was Reasonably Calculated to Inform the Settlement Class of its Rights.**

The Notice Program consisted of four different components: (1) Mailed Notice, (2) A Toll-Free Telephone Number, (3) Long-Form Notice, and (4) a website. Agreement ¶ 45; *see also* Declaration of Jessica Shain ("Shain Decl."), attached as **Exhibit C**, at ¶¶ 1-5.

Each facet of the Notice Program was timely and properly accomplished. The Notice Administrator received data from Defendant that identified 11,426 potential class members. September 8, 2020 the Notice Administrator-- after formatting the list for mailing purposes, removing duplicate records, and processing the names and addresses through the National Change of Address Database ("NCOA") to update any addresses on file with the United States Postal Service ("USPS")—mailed a copy of the Notice to all the Class Members. *Id.* at ¶¶ 2-3.

The Notice Administrator also established the Settlement Website, www.vftcpasettlement.com. *Id.* at ¶ 4. On the website, visitors can view answers to frequently asked questions, download important case documents including the Settlement Agreement, Preliminary Approval Order, Notice, and Claim Form, and/or file a claim. *Id.*

at ¶ 4.  In addition, a toll-free number was established. *Id.* at ¶5. By calling, Settlement Class members are able to obtain information about the Settlement and request a Notice and Claim Form.  *Id.* The telephone hotline became operational on September 7, 2020 and is accessible 24 hours a day, 7 days a week.

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977).  The Notice, among other things, defined the Settlement Class, described the release provided to Defendant under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class members that a final judgment would bind them unless they opted-out and told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement, as well as other important documents. Further, the Notice described Class Counsel's intention to seek attorneys' fees and expenses, and the Service Award for the Class Representative. Hence, Settlement Class members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306,314-15).

8

As of the time of this filing, the Settlement Administrator has received no objections to the settlement or requests to opt out of the settlement. Edelsberg Decl. ¶ 12.  The opt-out and objection period ends on October 6, 2020. *See* Prelim. Approval Order, [DE 34], at pg. 15.

### 2.    The Settlement Should Be Approved as Fair, Adequate and Reasonable.

"Federal policy favors class action settlement." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *2 (W.D. Ky. Aug. 23, 2010) (citing *UAW*, 497 F.3d at 632). The Sixth Circuit recognizes "the federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632*; see Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-CV-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("the law favors the settlement of class action lawsuits"). "[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *4* Alba Conte & Herbert Newberg*, Newberg On Class Actions* § 11.41 (4th ed. 2002).

Pursuant to Rule 23(e), a court should approve a class action settlement if it is fair, reasonable and adequate. *See UAW*, 497 F.3d at 631; see also *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 496 (E.D. Mich. 2008). "[W]hile courts have discretion in determining whether to approve a proposed settlement, they should be hesitant to engage in a trial on the merits or to substitute their judgment for that of the parties who negotiated the proposed settlement." *In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 WL 8747486, at *2 (S.D. Ohio Aug. 19, 2009) (citing *Leonhardt v.*

*ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 831 (E.D. Mich. 2008)). "Thus, in determining the reasonableness and adequacy of a proposed settlement, the Court should ascertain whether the settlement is within a "'range of reasonableness,' . . . and in the end, the Court's determinations are no more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.* (quoting *Leonhardt*, 581 F. Supp. 2d at 831 and *Officers for Justice v. The Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

Courts in the Sixth Circuit find seven factors relevant in considering whether a class action settlement is fair, adequate, and reasonable:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) (quoting *UAW*, 497 F.3d at 631).

"The district court enjoys wide discretion in assessing the weight and applicability of these factors." *Raden v. Martha Stewart Living Omnimedia, Inc.*, No. 4:16-cv-12808, 2019 U.S. Dist. LEXIS 129390, at *5 (E.D. Mich. Aug. 2, 2019) (Parker, J.) (quoting *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992); also citing *Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, 2006 WL 891151, at *14 ("The court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.")).

The analysis of these factors set forth below shows this Settlement to be eminently fair, adequate and reasonable.

10

### a.      There Was No Fraud or Collusion.

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *see also In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) (citing Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.51 (3d ed. 1992) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered."); *see also Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 295 (W.D. Ky. 2014). The contested nature of the proceedings in this Action demonstrates the absence of fraud or collusion behind the Settlement.

Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations. Edelsberg Decl. ¶ 4. Class Counsel and Defendant engaged in formal in-person mediation with mediator Honorable Michael T. Mason (Ret.). All negotiations were arm's-length and extensive. Edelsberg Decl. ¶ 4. Additionally, throughout the litigation, no allegation of fraud or collusion has been made against the parties.

### b.      The Settlement Will Avert Years of Complex and Expensive Litigation.

The complexity, expense, and likely duration of the litigation is another factor considered in determining the fairness of a settlement. *See Telectronics*, 137 F. Supp. 2d at 1013. "The Court must also consider the risks, expense, and delay the plaintiffs would confront if they pursued their claims and trial and through appeal." *In re Cardizem*, 218

F.R.D. at 523; *Telectronics*, 137 F. Supp. 2d at 1013; *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. at 295. These factors are weighed against the recovery provided by the settlement.

The claims and defenses are complex; recovery by any means other than settlement would require additional years of litigation. If this litigation were to continue, it would be lengthy and expensive and involve extensive motion practice, including a motion for class certification (and possibly a motion for decertification), motions for summary judgment and various pretrial motions, as well as the retention of experts, preparation of expert reports, and expert depositions.

Rather than embarking on years of protracted and uncertain litigation, Plaintiff and his counsel negotiated a Settlement that provides immediate, certain, and meaningful relief to all Settlement Class Members. Accordingly, the second factor weighs in favor of finding the Settlement fair, reasonable and adequate. Particularly because the demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement, there can be no doubt about the adequacy of the present Settlement, which provides reasonable benefits to the Settlement Class.

### c. The Stage of the Proceedings and Amount of Discovery Completed Favor Approval.

The stage of the proceedings and the extent of discovery completed is another factor that is considered in determining the fairness of a proposed settlement. *See Telectronics*, 137 F. Supp. 2d at 1015; *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000). Under this factor, the relevant inquiry is whether the plaintiff has obtained a

sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement. *See Nationwide*, 2009 WL 8747486, at *5-6. The parties need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable an intelligent appraisal of the settlement. *See id.* at *5 ("[A]lthough the parties were able to negotiate the Settlement at a relatively early stage of the proceedings, all of the parties had a 'clear view of the strengths and weaknesses of their cases.'").

Here, Class Counsel negotiated the Settlement with the benefit of targeted discovery, including non-party discovery. Edelsberg Decl. ¶ 5. Specifically, Class Counsel reviewed documents and electronic data regarding potential class members and the claims and defenses in this matter. *Id.* Plaintiff also spent considerable time researching and navigating Defendant's numerous defenses. Edelsberg Decl. at ¶ 17. As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate the strengths and weaknesses of Plaintiff's claims and Defendant's defenses, as well as the range and amount of damages that were potentially recoverable if the Action proceeded to judgment on a class-wide basis. Edelsberg Decl. ¶ 6.

### d. Plaintiff and the Class Still Faced Significant Obstacles to Prevailing.

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993). "The likelihood of success ... provides a gauge from which the benefits of the settlement must

be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.,* 726 F.2d 1075, 1086 (6th Cir.

1984). As the Sixth Circuit noted:

> The fairness of each settlement turns in large part on the bona
> fides of the parties' legal dispute. Although this inquiry
> understandably does not require us to 'decide the merits of the
> case or resolve unsettled legal questions,' we cannot 'judge the
> fairness of a proposed compromise' without 'weighing the
> plaintiff's likelihood of success on the merits against the
> amount and form of the relief offered in the settlement.'

*UAW,* 497 F.3d at 631 (citations omitted).

Here, the Settlement is well within the range of reasonableness in light of the best

possible recovery and the substantial risks presented by this litigation. Class Counsel

believes that Plaintiff had a strong case against Defendant. Edelsberg Decl. ¶ 7.  Even so,

Class Counsel are mindful that Defendant advanced significant defenses, including case

dispositive merits defenses and defenses to class certification that would have been

required to overcome in the absence of the Settlement.  *Id.*  This Action involved several

major litigation risks that loomed in the absence of settlement including, but not limited to,

class certification, a motion for summary judgment, *Daubert* motions, trial, as well as

appellate review following a final judgment. *Id.*

Apart from the risks, continued litigation would have involved substantial delay and

expense, which further counsels in favor of Final Approval. Edelsberg Decl. ¶ 8. Given the

myriad risks attending these claims, as well as the certainty of substantial delay and

expense from ongoing litigation, the Settlement represents a fair compromise.

> **e.  The Opinions of Class Counsel and the Plaintiff Favor
> Approval.**

14

Class Counsel strongly endorse the Settlement. Edelsberg Decl. ¶ 9.  The Court should defer to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation. *See, e.g., Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Ford Motor Co.*, 2008 WL 4104329, at \*26 (E.D. Mich. Aug. 29, 2008) ("The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."); *see also Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. at 297.

Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them. Edelsberg Decl. ¶ 10. Each Settlement Class Member who timely files a valid Claim Form shall automatically receive a cash distribution payable by check. The amount of each cash distribution shall be determined by the following formula: Net Settlement Fund divided by total number of Settlement Class Members = Settlement Fund Payment. Agreement ¶ 56. Settlement Class Claimants will be sent their Settlement Fund Payments to the address they submitted on their Claim Form no later than 45 days following the Effective Date. *Id.* Settlement Class Members can continue to submit Claim Forms up and through fifteen days after the Final Approval Hearing. Pursuant to the TCPA, while each injured Settlement Class member could have received $500.00 for each violative message received upon a successful verdict at trial, such a result was highly uncertain and would have required years of litigation.

As discussed above, Class Counsel claim extensive experience in complex litigation involving similar cases before federal and state courts across a number of jurisdictions.

15

This expertise, the meticulous discovery explained above, and the time and effort devoted to this settlement indicate that Class Counsel's opinion is entitled to great deference. Moreover, the Settlement is endorsed by the Representative Plaintiff, who has agreed to this Settlement Agreement.

### f.    The Reaction of Absent Class Members Favor Approval.

The Court's analysis of a proposed settlement should consider the reaction of the settlement class. "A certain number of ... objections are to be expected in a class action.... If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re Cardizem,* 218 F.R.D. at 527; *see also Dick v. Sprint Commc'ns Co. L.P.,* 297 F.R.D. at 297.

There has been no opposition to the Settlement, as not a single objection or opt-out was filed to date. Edelsberg Decl. ¶ 12. This is another indication that the Settlement Class is clearly satisfied with the Settlement.

### g.    The Public Interest Favors Approval.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530 (quoting *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)); *accord Ehrheart v. Verizon Wireless*, No. 08–4323, 2010 WL 2365867, at *3 (3d Cir. June 15, 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."); *see also Dick v. Sprint Commc'ns Co. L.*P., 297 F.R.D. at 297.

Here, the public interest weights in favor of providing finality. Under the settlement agreement Plaintiff, Class Members and Defendant are able to amicably resolve their disputes. This Settlement furthers public policy by providing a substantial recovery to the class members.

### 3. The Court Should Certify the Settlement Class.

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy. For the purpose of considering a settlement, all of the factors are satisfied.

The numerosity requirement of Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." *See Daffin v. Ford Motor Co*, 458 F.3d 549, 552 (6th Cir. 2006) (explaining that "while there is no strict numerical test, substantial

numbers usually satisfy the numerosity requirement" (internal quotation marks omitted)). Here the numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 11,426 individuals, and joinder of all such persons is impracticable.

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). For commonality, "there need only be one question common to the class, so long as the resolution of that question will advance the litigation." *Philips v. Philip Morris Cos. Inc.*, 298 F.R.D. 355, 363 (N.D. Ohio 2014) (internal quotation marks and alteration omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. Typicality is designed to assess "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)). Plaintiff is typical of absent Settlement Class members because he received a

18

violative communication and suffered the same injuries as them and because they will all benefit from the relief achieved.

Plaintiff and Class Counsel satisfy the adequacy of representation requirement under Rule 23(a)(4), which "serves to uncover conflicts of the interest between named parties and the class they seek to represent." *Amchem Prods.,* 521 U.S. at 625. Rule 23(a)(4) ensures that the named representatives "will fairly and adequately protect the interests of the class." Adequacy has two components: "1) [T]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Vassalle v. Midland Funding, LLC*, 708 F.3d 747, 757 (6th Cir. 2013) (alteration in original)). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests.  Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions.

Certification of the Settlement Class is further appropriate because the questions of law or fact common to members of the Settlement Class predominate over any questions affecting only individual members. *See* Fed. R. Civ. P. 23(b)(3). To satisfy predominance, "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th

Cir. 2007) (internal quotation marks omitted). "The fact that a defense may arise or may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Id.* (internal quotation marks omitted); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013) ("Rule 23(b)(3), however, does *not* require a plaintiff seeking class certification to prove that every element of her claim is susceptible to classwide proof." (internal quotation marks and alterations omitted)). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member.  The necessity for the court to deal with any individual issues in the litigation context is also attenuated in the settlement context. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

Based on the foregoing, the Settlement is fair, adequate and reasonable.

## III.    APPLICATION FOR SERVICE AWARD

Pursuant to the Settlement, Class Counsel respectfully request, and Defendant does not oppose, a Service Award for the Class Representative in the amount of $5,000.00. Incentive awards are fairly typical in class action cases. *See* 4 William B. Rubenstein et al., *Newberg on Class Actions* § 11:38 (4th ed. 2008). "Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). "Incentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual

20

efforts taken on behalf of the class." *Id.*

District courts in the Sixth Circuit have considered the following factors in determining whether to approve incentive awards for class representatives:

> (1) the action taken by the Class Representatives to protect the interests of Class Members and others and whether these actions resulted in a substantial benefit to Class members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the class Representatives in pursuing the litigation.

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991).

These factors, as applied to this Action, demonstrate the reasonableness of the requested Service Award to Plaintiff. Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action including submitting to interviews with Class Counsel, reviewing all material filings, including approving the Agreement. Edelsberg Decl. ¶ 13.

The Service Award of $5,000.00 is less than 0.005% of the Settlement Fund, a ratio that falls well below the range of what has been deemed to be reasonable. *See, e.g.*, *Enterprise Energy*, 137 F.R.D. at 251 (approving service awards totaling $300,000, or 0.56% of a $56.6 million settlement). The Service Award requested here is reasonable.

## IV.   APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to the Agreement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees of 35% of the Settlement Fund and costs and expenses in the amount of $15,491.79.

21

Edelsberg Decl. ¶ 14. Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. *Id.* at ¶ 3. The requested fee is within the range of reason under the factors listed in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). For the reasons detailed herein, Class Counsel submit that the requested fee is appropriate, fair and reasonable and respectfully requests that it be approved by the Court.

### A. The Law Awards Class Counsel Fees from the Common Fund Created Through Counsels' Efforts.

"[I]t is well established that 'a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Cardizem*, 218 F.R.D. at 531-32 (Edmunds, J.) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). In common fund cases, the Sixth Circuit has held that "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). The standard for an award of attorneys' fee in common fund cases in the Sixth Circuit is that they be "reasonable under the circumstances." *Id.*; *see In re Cardizem*, 218 F.R.D. at 531.

### B. The Court Should Award A Percentage of the Common Fund.

Although the Sixth Circuit has granted trial courts the discretion to utilize either the lodestar or the percentage-of-the-fund method when awarding attorney fees (*Rawlings*, 9 F.3d at 516), courts within the Sixth Circuit have recognized the clear trend "'toward adoption of a percentage of the fund method' in common fund cases." *In re Se. Milk Antitrust*

*Litig.*, No. 2:07-CV 208, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013).

Courts in this Circuit prefer the percentage method of awarding attorneys' fees because it eliminates disputes about the reasonableness of rates and hours, conserves judicial resources, and aligns the interests of class counsel and the class members. *See Rawlings*, 9 F.3d at 515; *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, No. 10-CV-14360, 2015 WL 1498888, at *15 (E.D. Mich. Mar. 31, 2015); *Hillson v. Kelly Servs. Inc.,* 2017 WL 3446596, at *2 (E.D. Mich. Aug. 11, 2017) (stating that "[t]he percentage-of-recovery approach is 'easy to calculate' and 'establishes reasonable expectations on the part of plaintiffs' attorneys[.]'"); *In re Packaged Ice Antitrust Litig.*, 08-MDL-01952, 2011 WL 6209188, at *16 (E.D. Mich. Dec. 13, 2011); *Delphi*, 248 F.R.D. at 502. It also "more accurately reflects the result achieved" and "has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, *1 (E.D. Tenn. Jun. 30, 2014) (citations omitted). In other words, the percentage-of-the-fund method ""provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Se. Milk*, 2013 WL 2155387, at *2 (quoting *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir.2005)).

District courts in this Circuit—and this District—have virtually uniformly shifted to the percentage method in awarding fees in common fund cases. *See Skelaxin*, 2014 WL 2946459, at *1 ("The Court recognizes that the trend in 'common fund cases has been toward use of the percentage method.'"); *In re Cardizem*, 218 F.R.D. at 532 (courts in the Sixth Circuit have "indicated a preference for the percentage-of-the-fund method in common fund cases"); *Delphi*, 248 F.R.D. at 502; *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d

752, 764 (S.D. Ohio 2007); *Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *17; *Swigart v. Fifth Third Bank*, No. 1:11- CV-88, 2014 WL 3447947, at *5 (S.D. Ohio July 11, 2014); N.Y.S. Teachers' Ret. Sys. v. Gen. Motors Co., 315 F.R.D. 226, 243 (E.D. Mich. 2016) ("the percentage of the fund method more accurately reflects the results achieved."); Fournier v. PFS Invs., Inc., 997 F. Supp. 828, 831-32 (E.D. Mich. 1998) ("[M]any courts have strayed from using lodestar in common fund cases and moved towards the percentage of the fund method which allows for a more accurate approximation of a reasonable award for fees."). The percentage of the fund approach has likewise been endorsed in the First, Second, Third, Seventh, Eighth, Ninth, Tenth, Eleventh, and District of Columbia Circuits.[3] As the Sixth Circuit has observed, "[t]he percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Rawlings*, 9 F.3d at 516.

The lodestar method, on the other hand, "has been criticized for being too time-consuming of scarce judicial resources," as it requires that courts "pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier." *Id.* at 516-17. Moreover, "[w]ith the emphasis it places on the number

---

[3] *In re Thirteen Appeals*, 56 F.3d at 307; *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *In re General Motors Corp., Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995); *Matter of Continental Illinois Sec.Litig.*, 962 F.2d 566, 567 (7th Cir. 1992) (as amended on denial of motions for rehearing and clarification); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244-46 (8th Cir. 1996); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).

of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement." *Id.* at 517; *see also Manual for Complex Litigation* (Third) § 24.12 at 189 (West 1995). Thus, there has been a "'trend towards adoption of a percentage-of-the-fund method in [common fund] cases.'" *Delphi*, 248 F.R.D. at 502 (quoting *Rawlings*, 9 F.3d at 516-517).

Respectfully, the Court should employ the percentage of the fund method here.

**C.   A Review of the Sixth Circuit Factors Confirms that the Requested Fee is Fair and Reasonable**

District courts have the discretion to select the particular method of calculation, but must articulate the "reasons for 'adopting a particular methodology and the factors considered in arriving at the fee.'" *Gascho v. Glob. Fitness Holdings*, LLC, 822 F.3d 269, 280 (6th Cir. 2016).

> Often, but by no means invariably, the explanation will address these factors: "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides."

*Gascho v. Glob. Fitness Holdings*, LLC, 822 F.3d 269, 280 (6th Cir. 2016) (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)). "[I]n common-fund cases, we require 'only that awards of attorney's fees' 'be reasonable under the circumstances.'" *Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).

A "reasonable" fee in common-fund cases "typically rang[es] from 20 to 50 percent

of the fund." *In re Rio Hair Naturalizer Prod. Liab. Litig.*, 1996 WL 780512, at *16 (E.D.

Mich. Dec. 20, 1996); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997)

("Typically, the percentage awarded ranges from 20 to 50 percent of the common fund

created."); *Simpson* v. *Citizens Bank*, 2014 WL 12738263, at *6 (E.D. Mich. Jan. 31, 2014)

("[D]istrict courts in the Sixth Circuit begin with a 'benchmark percentage' ranging

between 20-50%") (citing *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148,

150 (S.D. Ohio 1986)).

In this case, while the Settlement Agreement allows Class Counsel to seek up to

40% of the fund, Class Counsel requests 35%.  Each of the relevant factors supports the

requested fee award, and as such, the Court should find a fee award of 35% reasonable.

### 1.    The Value of the Benefit Rendered to the Settlement Class Supports the Requested Fee.

Courts consistently recognize that the result achieved is the primary factor to be

considered in making a fee award. *See Delphi*, 248 F.R.D. at 503; *In re DPL Inc., Sec.

Litig.*, 307 F. Supp. 2d 947, 951 (S.D. Ohio 2004). Given the significant litigation risks

Class Counsel faced, the Settlement represents a successful result.  Rather than facing years

of costly and uncertain litigation, each Settlement Class Member is entitled to claim a cash

benefit which shall be determined by the following formula: Net Settlement Fund divided

by total number of Settlement Class Members = Settlement Fund Payment. Edelsberg Decl.

¶ 23.  Without such a class action, small individual claimants would lack the resources to

litigate a case of this magnitude. Attorneys who take on class action matters serve as a

benefit to society and the judicial process by enabling such small claimants to pool their

claims and resources.

**3.    Class Counsel's Considerable Risk to Pursue This Action on a Pure Contingency Basis Supports the Requested Fee.**

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Edelsberg Decl. ¶ 27. That risk warrants an appropriate fee.

Public policy concerns–in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims–support the requested fee.  Edelsberg Decl. ¶ 28.  The progress of the Action to date shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. Despite Class Counsel's effort in litigating this Action, Class Counsel remain completely uncompensated for the time invested in the Action, in addition to the expenses Class Counsel advanced. Edelsberg Decl. ¶ 29.  There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel. This supports a finding that the fee request is reasonable. *See id*.; *Stanley v. U.S. Steel Co*., No. 04-74654, 2009 WL 4646647, at *3 (E.D. Mich. Dec. 8, 2009) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.").

**4.    Society's Stake in Rewarding Attorneys who Enforce the TCPA Laws Supports the Requested Fee.**

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result.  Rather than facing years of costly and uncertain litigation, each Settlement Class Member is entitled to claim a cash benefit which shall be determined by the following formula: Net Settlement Fund divided by total number of Settlement Class

Members = Settlement Fund Payment. Agreement.  Edelsberg Decl. ¶ 23.  Therefore, society has a stake in rewarding attorneys who enforce these violations and obtain a successful result for their class members.

### 5.      The Complexity of the Litigation Supports the Requested Fee.

The Settlement is particularly noteworthy given the combined litigation risks. Edelsberg Decl. ¶ 24. As discussed, Defendant raised substantial and meritorious defenses. Prosecuting the Action was risky from the outset. Edelsberg Decl. ¶ 25. Defendant was confident in their opposition to Plaintiff's claims. The Settlement Fund obtained through the Settlement is substantial, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement. Any of these risks could easily have impeded, if not altogether derailed, Plaintiff's and the Settlement Class's successful prosecution of these claims.

The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to certify a class and establish liability and damages at trial; and (ii) the final judgment was affirmed on appeal. The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Defendant's defenses, and the challenging and unpredictable path of litigation Plaintiff and the certified class would have faced absent the Settlement. Edelsberg Decl. ¶ 26.

This Court witnessed the quality of Class Counsel's legal work, which conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles.

Class Counsel's work required the acquisition and analysis of a significant amount of factual and legal information.

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Litigation of this Action required counsel trained in class action law and procedure as well as the specialized issues presented here, such as analyzing class certification and navigating case dispositive merits issues. Class Counsel possess these attributes, and their participation added value to the representation of this Settlement Class. Edelsberg Decl. ¶ 21.

### 6. The Professional Skill and Standing of Counsel Supports the Request Fee.

The skill and experience of counsel on both sides of the "v" is a factor courts may consider in determining a reasonable fee award. *E.g, Polyurethane Foam*, 2015 WL 1639269 at * 7. The Court, in appointing Shamis & Gentile, P.A., Edelsberg Law, P.A., Hiraldo, P.A., Eisenband Law, P.A., and IJH Law as Class Counsel, recognized that they have the requisite skill and experience in class action litigation to serve effectively in these roles. Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Edelsberg Decl. ¶ 15. Class Counsel devoted substantial time to investigating the claims against Defendant. *Id.* at ¶ 16. Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* at ¶ 17. Time and resources were also dedicated to conducting formal discovery. *Id*. at ¶ 18.

Settlement negotiations consumed further time and resources. Edelsberg Decl. ¶ 19. The initial mediation session required substantial preparation and document review.

Finally, significant time was devoted to negotiating and drafting of the Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order. All of this work consumed a substantial amount of time. *Id.* All told, Class Counsel's coordinated work paid dividends for the Settlement Class. Each of the above-described efforts was essential to achieving the Settlement before the Court. Edelsberg Decl. ¶ 20. The time and resources devoted to this Action readily justify the requested fee.

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. Throughout the litigation, Defendant was represented by professional, capable counsel. They were worthy, highly competent adversaries. Edelsberg Decl. ¶ 22

Consequently, the attorneys' fee requested here is appropriate and should be awarded.

## V.    CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as **Exhibit D**; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the law firms and attorneys listed in paragraph 5 of the Agreement; (5) approve the requested Service Award in the amount of $5,000.00 for the Plaintiff; (6) award Class Counsel attorneys' fees in the amount of 35% of the Settlement Fund and costs

in the amount of $15,491.79; and (7) enter Final Judgment dismissing the Action with prejudice. Counsel for Defendant has no opposition to this motion.

Dated: October 6, 2020.

| | |
|---|---|
| */s/ Ignacio J. Hiraldo, Esq.*<br><br>**IJH LAW**<br>Ignacio J. Hiraldo, Esq.<br>Florida Bar No. 0056031<br>Washington, DC Bar No. 485610<br>1200 Brickell Ave Suite 1950<br>Miami, FL 33131<br>Email: ijhiraldo@ijhlaw.com<br>Telephone: 786.496.4469 | Steven K. Mamat<br>**Flood, Lanctot, Connor & Stablein, PLLC**<br>401 N. Main Street<br>Royal Oak, MI 48067 |
| **HIRALDO P.A.**<br>Manuel S. Hiraldo<br>Florida Bar No. 030380<br>401 E. Las Olas Boulevard Suite 1400<br>Ft. Lauderdale, Florida 33301<br>Email: mhiraldo@hiraldolaw.com<br>Telephone: 954-400-4713 | **EISENBAND LAW, P.A.**<br>Michael Eisenband<br>Florida Bar No. 94235<br>515 E. Las Olas Boulevard, Suite 120<br>Ft. Lauderdale, Florida 33301<br>MEisenband@Eisenbandlaw.com<br>Telephone: 954.533.4092 |
| **SHAMIS & GENTILE, P.A.**<br>Andrew J. Shamis<br>Florida Bar No. 101754<br>ashamis@shamisgentile.com<br>14 NE 1st Avenue, Suite 400<br>Miami, Florida 33132<br>(t) (305) 479-2299 | **EDELSBERG LAW, PA**<br>Scott Edelsberg, Esq.<br>scott@edelsberglaw.com<br>20900 NE 30th Ave, #417<br>Aventura, FL 33180<br>Telephone: 305-975-3320 |